[No. F072147. Fifth Dist. July 14, 2016.]

CITY OF SELMA, Plaintiff and Appellant, v.
FRESNO COUNTY LOCAL AGENCY FORMATION COMMISSION,
Defendant and Respondent;
CITY OF KINGSBURG, Real Party in Interest and Respondent.

576

**COUNSEL**

Costanzo & Associates and Neal E. Costanzo for Plaintiff and Appellant.

Baker, Manock & Jensen and Kenneth J. Price for Defendant and Respondent.

Kahn, Soares & Conway, Rissa A. Stuart and Michael J. Noland for Real Party in Interest and Respondent.

**OPINION**

**PEÑA, J.—**

## INTRODUCTION

When a local agency formation commission sets a public hearing on a reorganization proposal and thereafter continues the hearing date beyond the 70-day limitation for continuances under Government Code section 56666, subdivision (a), is the approval of the reorganization proposal by the commission void because it violated a mandatory provision? We conclude the 70-day limitation is a directory rather than a mandatory provision. As a result, we hold the violation of the 70-day limitation in this case did not affect the validity of the commission's actions taken at the continued hearing.

## FACTS

### 1. *The Project*

In 2012, the City of Kingsburg (Kingsburg) studied a proposal to annex approximately 430 acres of land in Fresno County (the Annexation Territory).

The Annexation Territory included 350 acres that had been developed with industrial/commercial uses, 52 undeveloped acres, and approximately 28 acres of street rights-of-way. The Annexation Territory is home to at least three major facilities, including a glass manufacturing plant run by Guardian Industries Corp., a grape processing facility run by Vie-Del Company, and a raisin processing plant run by Sun-Maid Growers of California.

In addition to annexing the land into Kingsburg, the project also involved detaching portions of the Annexation Territory from the Fresno County Fire Protection District (FCFPD), the Consolidated Irrigation District, and the Kings River Conservation District. The project also involved annexing portions of the Annexation Territory into the Selma-Kingsburg-Fowler County Sanitation District. Finally, the project included prezoning approximately 183 acres as "Highway Commercial" and "Light Industrial."

## 2. California Environmental Quality Act[1] Review

Kingsburg prepared and circulated a combined initial study and mitigated negative declaration for the annexation project (MND). (See Cal. Code Regs., tit. 14, §§ 15365, 15369.5.)[2] Below, we discuss certain portions of the MND in detail along with the appellate issues to which they pertain.

On September 5, 2012, the Kingsburg City Council certified the MND.

## 3. Local Agency Formation Commission Proceedings

■ Every county in California has a local agency formation commission. (Gov. Code, § 56325.)[3] These commissions oversee local agency boundary changes, including municipal annexations, under the auspices of the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (hereafter Reorganization Act). (§ 56000 et seq.; *Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com.* (2006) 135 Cal.App.4th 793, 797 [37 Cal.Rptr.3d 729]; see § 56375.)

When Kingsburg certified the MND on September 5, 2012, it also requested that the Fresno County Local Agency Formation Commission (LAFCo)[4] initiate proceedings to approve the annexation. On October 22, 2012, Kingsburg submitted to LAFCo application materials for approval of the annexation.

---

[1] Public Resources Code section 21000 et seq. (CEQA).

[2] The Guidelines for the Implementation of the California Environmental Quality Act (Cal. Code Regs., tit. 14, § 15000 et seq.) will hereinafter be referred to as the "CEQA Guidelines."

[3] All undesignated statutory references are to the Government Code.

[4] "We shall hereafter refer to that commission, and to such commissions generally, as LAFC[o]; the context will make clear which meaning is intended." (*City of Santa Cruz v. Local Agency Formation Com.* (1978) 76 Cal.App.3d 381, 386 [142 Cal.Rptr. 873].)

LAFCo rejected the application since it had relied on a previous application from nine years prior. LAFCo requested Kingsburg submit a new application, and Kingsburg did so in November 2012. The application indicated no change was being proposed to the provision of domestic water for the area.

Kingsburg prepared a service plan, describing how certain services would be provided to the Annexation Territory. (See § 56653.) Kingsburg's service plan is dated July 2012. However, in an e-mail correspondence on November 2, 2012, LAFCo staff informed Kingsburg staff that a service plan was required. Kingsburg staff responded by asking what a service plan was, and they were provided an exemplar by LAFCo on November 8, 2012. This information suggests the service plan was not prepared in July 2012, but rather sometime on or after November 8, 2012.

On November 15, 2012, LAFCo's Executive Officer Jeff Witte sent a notice and request for comment to several local agencies. (See § 56663.) The notice indicated: "LAFCo can not [*sic*] take any further action on this resolution of application for 10 days following this notice and request for comments. [¶] If your agency files a written request for a hearing during this 10-day period, LAFCo must notice and hear this proposal at a public hearing. If no written request is filed by your agency, the Commission may proceed without notice and hearing if all required conditions pursuant to state law have been satisfied (Gov Code Sec 56663 (b))."

On November 21, 2012, the City of Selma (Selma) transmitted through counsel a written demand for notice and hearing "[p]ursuant to . . . § 56663(b)" to Witte. The demand referenced a November 15, 2012, notice from Witte to Selma. Selma's letter demanded LAFCo only make determinations concerning Kingsburg's application after notice and a hearing. The demand also referenced CEQA litigation Selma had initiated against Kingsburg over the annexation project. The demand raised the possibility a court would issue an injunction preventing LAFCo from further processing Kingsburg's application.

On November 28, 2012, LAFCo's counsel provided a written response. The letter indicated Witte believed LAFCo had an obligation to move forward with Kingsburg's application despite the pendency of the CEQA litigation. The letter informed Selma that Witte anticipated Kingsburg's application would be considered by LAFCo during its January 9, 2013, meeting, rather than on December 5, 2012.

On December 4, 2012, LAFCo informed Kingsburg in writing its application was incomplete. The letter indicated that in order for a certificate of

filing (§ 56658, subds. (f)–(g)) to issue and a hearing to be scheduled, Kingsburg needed to provide a "Signed Legal Indemnity" and a letter from the Selma-Kingsburg-Fowler County Sanitation District indicating its willingness and ability to serve the Annexation Territory.

On December 10, 2012, LAFCo requested additional documentation from Kingsburg.

On March 18, 2013, Witte sent a document to Kingsburg with the heading "CERTIFICATE OF FILING." The body of the document stated:

"This notice certifies that on March 18, 2013, pursuant to Section 56658(g) . . . , the proposed 'Guardian/Sun-Maid Reorganization' for the City of Kingsburg was accepted for filing with the Local Agency Formation Commission.

"The time, date and place for the Local Agency Formation Commission's consideration of the subject proposal is 1:30 p.m., Wednesday, April 10, 2013, in Room 301, Hall of Records, Tulare and 'M' Streets, Fresno."

A notice of public hearing was published in The Business Journal on March 18, 2013. The notice indicated that on April 10, 2013, at 1:30 p.m., LAFCo would be considering Kingsburg's requested annexation.

In a letter dated April 10, 2013, Guardian Industries Corp. requested LAFCo postpone the hearing on the annexation application. The letter indicated that "[w]hile Guardian has not proposed any specific project on the Guardian Property, to remain competitive in the glass manufacturing business, Guardian from time to time is required to perform modifications to its facility, which usually requires discretionary permits from the applicable local agency. Indeed, [a LAFCo] Staff Report recognizes the strong possibility of future expansion . . . ."

That same day, LAFCo continued the hearing on the reorganization "to a date uncertain to allow time for . . . Kingsburg and the [FCFPD] to negotiate a transition agreement consistent with LAFCo Policy 102-04-041."

A LAFCo executive officer's report, also dated April 10, 2013, indicated that on "March 29, 2013, [Kingsburg] informed LAFCo Executive Officer that [Kingsburg] intends to provide an addendum to the certified Mitigated Negative Declaration addressing the lack of a fire transition agreement between the [FCFPD] and [Kingsburg]."

The addendum to the MND appears in the administrative record. The addendum contains the text "Draft: 040113" at the top, suggesting it was

being worked on in early April 2013. The addendum references a transition agreement that had been in place between Kingsburg and FCFPD. The addendum indicated the transition agreement—which concerned the transfer of certain general ad valorem real property tax revenue affected by annexations—had expired and no new agreement was in place. The addendum asserts the absence of a transition agreement "did not result in any new or increased impacts to fire protection services for the Territory after annexation. Additionally, the . . . Kingsburg Fire Department has sufficient capacity to service [the] Territory with both fire and emergency services."

In a document entitled "LAFCo Notes," Witte commented: "I am concerned that . . . Kingsburg originally said that there were no projects forthcoming for Guardian Industries or Sun Maid, and I am now hearing from some connections in the construction industry that Sun Maid is looking at a major project."

An executive officer's report stated the April 10, 2013, hearing had been "continued to a date uncertain (with a target date of June 5, 2013) to allow time" for a transition agreement to be negotiated. However, as of June 5, 2013, the parties were still in negotiations on a transition agreement. According to the agenda for the June 5, 2013, LAFCo meeting, the commission was given an update concerning the Kingsburg annexation matter. The June 5, 2013, executive officer's report indicated LAFCo staff intended the transition agreement issue, among others, to be "resolved in time for the August 7, 2013 hearing."

On June 24, 2013, LAFCo published in The Business Journal a notice of a public hearing on the annexation for July 17, 2013.

On July 15, 2013, Selma transmitted a letter to LAFCo objecting to the notice of hearing for the July 17, 2013, meeting. Selma asserted that under section 56666, subdivision (a), LAFCo could not continue the hearing to July 17, 2013, because it was more than 70 days after the originally noticed date of April 10, 2013.

LAFCo's counsel responded the 70-day limitation in section 56666, subdivision (a) was directory rather than mandatory pursuant to section 56106.

On the date of the hearing, Kingsburg and FCFPD advised LAFCo they were finalizing a transition agreement. After the public hearing, LAFCo then determined the CEQA documents prepared by Kingsburg were legally adequate and that the annexation was consistent with LAFCo's standards and the Reorganization Act.

LAFCo approved the annexation, subject to several conditions.

On July 24, 2013, LAFCo filed a notice of determination. (Pub. Resources Code, § 21152.)

Selma filed a writ of mandate challenging LAFCo's approval of the annexation. The trial court denied the writ and Selma appeals.

## DISCUSSION

I. *The 70-day Time Limit in Section 56666, Subdivision (a) Is Directory, Not Mandatory*

"Issues involving the interpretation and application of statutes are subject to de novo review." (*Cequel III Communications I, LLC v. Local Agency Formation Com. of Nevada County* (2007) 149 Cal.App.4th 310, 317 [57 Cal.Rptr.3d 32].) Selma presents such an issue by arguing LAFCo violated the Reorganization Act by continuing the public hearing on the annexation for more than 70 days.

Section 56666, subdivision (a) provides: "The hearing shall be held by the commission upon the date and at the time and place specified. The hearing may be continued from time to time but not to exceed 70 days from the date specified in the original notice."

LAFCo does not dispute the hearing was continued to a date more than 70 days after the date specified in the original notice.[5] Instead, it contends the 70-day limitation is directory rather than mandatory.

■ "A statutory requirement may impose . . . a duty to act in a particular way, and yet failure to do so may not void the governmental action taken in violation of the duty. [Citations.] This distinction is generally expressed in terms of calling the duty 'mandatory' or 'directory.' '[T]he "directory" or "mandatory" designation does not refer to whether a particular statutory requirement is "permissive" or "obligatory," but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " (*In re Richard S.* (1991) 54 Cal.3d 857, 865 [2 Cal.Rptr.2d 2, 819 P.2d 843].)

---

[5] The certificate of filing was issued on March 18, 2013.

A subsequently published notice set the hearing date at April 10, 2013. Thereafter, LAFCo continued the hearing "to a date uncertain to allow time for . . . Kingsburg and the [FCFPD] to negotiate a transition agreement." Eventually the continued hearing was held on July 17, 2013, more than 70 days after April 10, 2013.

Section 56106[6] provides: "Any provisions in this division governing the time within which an official or the commission is to act shall in all instances, except for notice requirements and the requirements of subdivision (h) of Section 56658 and subdivision (b) of Section 56895, be deemed directory, rather than mandatory."

■ The meaning of this statute is clear. If a provision of the Reorganization Act meets three criteria, it is directory. First, the provision must "govern[] the time within which an official or the commission is to act." (§ 56106.) Second, the provision must not be a "notice requirement[]." (*Ibid.*) Finally, the provision must not be a "requirement[] of subdivision (h) of Section 56658" or "subdivision (b) of Section 56895." (*Ibid.*) If the provision satisfies these three conditions, it is directory and not mandatory.

A. *The 70-day Limitation Governs the Time Within Which the Commission Is to Act*

■ Section 56666, subdivision (a) "govern[s] the time within which . . . the commission is to act." (§ 56106.) Specifically, it requires the commission to "act" by holding a continued hearing within 70 days from the date specified in the original notice. (§ 56666, subd. (a).)

■ Selma argues the provision does not govern the time within which LAFCo is to act; instead, it "sets outermost limitations for conducting the hearing." Selma argues the subject matter of section 56666, subdivision (a) is the same as section 56658, subdivision (h), and neither statute has anything to do with the time in which LAFCo is to take action. But if that were true, why would section 56106 have to say that it applies to "provisions . . . governing the time within which an official or the commission is to act . . . *except for . . . the requirements of subdivision (h) of Section 56658*"? (§ 56106, italics added.) If subdivision (h) of section 56658 was not a provision governing the time within which a LAFCo is to act, then there would be no need for this exception. Thus, Selma's interpretation would render language in section 56106 superfluous and we reject it. (See *Card v. Community Redevelopment Agency* (1976) 61 Cal.App.3d 570, 577 [131 Cal.Rptr. 153] [rejecting interpretation of statute because it rendered language in statute superfluous].)

B. *The 70-day Limitation Is Not a "Notice Requirement"*

■ The Reorganization Act does have several notice requirements. For example, section 56660 requires a LAFCo executive officer to give notice of

---

[6] Effective January 1, 2015, section 56106 was amended to reference relettered subdivision (h) of section 56658. (Stats. 2014, ch. 112, § 3.) The parties cite to the current version of section 56106 rather than the version in effect in 2013. We will do the same.

any hearing by publication. Section 56661 requires a LAFCo to make notices available on its Web site if it has one. Section 56155 requires mailed notice to "be sent first class and deposited, postage prepaid, in the United States mails."

However, section 56666, subdivision (a) is different. In relevant part, it permits continuation of a hearing "not to exceed 70 days from the date specified in the original notice." (§ 56666, subd. (a).) This is a *scheduling* requirement for continued hearings, not a *notice requirement*.

Admittedly, the provision does contain the word "notice." However, that mention can hardly be described as a notice *requirement*. The reference to "the original notice" does not articulate any requirement on the notice, but instead is used to describe the *time* requirement being imposed on *the scheduling of continued hearings*. To illustrate, imagine the statute said "the public hearing cannot be continued for more than 70 days from the date an application is filed with the LAFCo." No one would call that an "application requirement." Similarly, section 56666, subdivision (a) is not a notice requirement under section 56106.

C. *The 70-day Limitation Is Not a Requirement of Section 56658, Subdivision (h) or Section 56895, Subdivision (b)*

■ The 70-day limitation is not a requirement of either section 56658, subdivision (h) or section 56895, subdivision (b).[7] Section 56658, subdivision (h) requires the public hearing to be initially scheduled for a date "not more than 90 days after issuance of the certificate of filing or after the application is deemed to have been accepted, whichever is earlier."

Section 56666, subdivision (a)'s 70-day limitation on continued hearings is nowhere to be found in section 56658, subdivision (h). Selma emphasizes the last sentence of section 56658, subdivision (h), which reads: "Notwithstanding Section 56106, the date for conducting the hearing, as determined pursuant to this subdivision, is mandatory." But that provision concerns the initial scheduling of the hearing, while an entirely different statute—section 56666, subdivision (a)—deals with scheduling continued hearings. The last sentence of section 56658, subdivision (h) applies, by its own terms, to hearing dates "determined pursuant to this subdivision." The July 17, 2013, hearing date being challenged here was *not* determined pursuant to that subdivision (i.e., § 56658, subd. (h)). It was determined pursuant to section 56666, subdivision (a).

---

[7] Section 56895 concerns written requests for a LAFCo to amend or reconsider its resolutions and is clearly inapplicable. (§ 56895, subd. (a).)

Selma also argues that since the 90-day limitation for initial hearings is mandatory, we should hold the 70-day limitation for continued hearings in section 56666 is also mandatory.[8] There are several flaws with this reasoning.

■ First, the fact section 56658, subdivision (h) expressly excepts itself from section 56106 while section 56666, subdivision (a) does not, militates *against* finding the latter mandatory. The Legislature clearly knew how to except a provision from the reach of section 56106. The fact section 56666, subdivision (a) contains no such exception indicates the Legislature did not intend to remove it from the scope of section 56106. (Cf. *Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 583 [80 Cal.Rptr.3d 83, 187 P.3d 934] [express exception in one statute shows Legislature knew how to enact exception but chose not do so in another statute].)

■ Second, Selma argues construing the language of section 56666, subdivision (a) as directory rather than mandatory would render section 56658, subdivision (h) meaningless. Selma observes that if the 70-day limit for continued hearings is directory, then a LAFCo could schedule an initial hearing within the 90-day time limit and then continue the hearing indefinitely into the future. But doing so would violate the statute. Even though section 56666, subdivision (a) is directory, it does not permit a LAFCo to act as described in Selma's hypothetical. " '[T]he "directory" or "mandatory" designation does not refer to whether a particular statutory requirement is "permissive" or "obligatory," but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " (*In re Richard S., supra*, 54 Cal.3d at p. 865.) In other words, acting contrary to a directory statute is still a " 'failure to comply' " (*ibid.*) with the statute. Here, the 70-day limitation on continued hearings is obligatory in the sense that a LAFCo violates the Reorganization Act when it continues a hearing in excess of 70 days from the date specified in the original notice.[9] We agree the statutory text indicates the Legislature wanted to avoid the "loophole" Selma describes. But " '[n]o legislation pursues its purposes at all costs.' " (*County of Sonoma v. Cohen* (2015) 235 Cal.App.4th 42, 48 [184 Cal.Rptr.3d 911].) While the Legislature requires a LAFCo to

---

[8] In its reply brief, Selma claims it is not contending LAFCo's approval is void because it occurred at a continued hearing set more than 70 days after the original notice of hearing. Selma's primary argument is that no valid continuance occurred and, therefore, the purported July 17, 2013, hearing is governed by section 56658, subdivision (h). But Selma's opening brief also asserts LAFCo's action was void for failing to conform to section 56666, subdivision (a). Even Selma's reply brief goes on to argue that section 56666, subdivision (a) is mandatory.

[9] In this respect, we disagree with LAFCo's assertion "directory" is synonymous with "discretionary." We do not hold a LAFCo is permitted to continue a hearing beyond 70 days. Instead, we hold that when a LAFCo does continue a hearing beyond 70 days in violation of section 56666, subdivision (a), the consequence is not reversal of its determinations.

hold continued hearings within a particular time frame, it apparently did not want a failure to comply with that time frame requirement to result in invalidation of the LAFCo's determinations. (See § 56106.)

 While this conclusion renders the 70-day limit relatively toothless, " '[w]e are not free to rewrite the law simply because a literal interpretation may produce results of arguable utility.' " (*Steven R. v. Superior Court* (2015) 241 Cal.App.4th 812, 821 [194 Cal.Rptr.3d 183].) We are not concerned with whether a law is toothless, so long as it is intentionally so. (See Code Civ. Proc., § 1858.)

Moreover, even if we agreed it does not make sense to have a *mandatory* 90-day limitation for the initial scheduling of a hearing and a *directory* 70-day limitation on the continuance of hearings, that conclusion would not change our decision. Even when a particular statutory distinction "makes not a whit of sense" (*CSX Transp., Inc. v. Alabama Dept. of Revenue* (2011) 562 U.S. 277, 295 [179 L.Ed.2d 37, 131 S.Ct. 1101]), courts must defer to the fact the Legislature "wrote the statute it wrote . . . ." (*Id.* at p. 296.)

D. *Selma's Contention That No Continuance Occurred Is Unavailing**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**II., III.***

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**DISPOSITION**

Affirmed.

Kane, Acting P. J., and Detjen, J., concurring.

A petition for a rehearing was denied August 11, 2016, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 12, 2016, S236575.

---

*See footnote, *ante*, page 573.